UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DEMETRIOUS STEWART, | Case No. 3:16-cv-00046-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF** |
| v. | **U.S. MAGISTRATE JUDGE** |
| E.K. DANIEL, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's Motion for Preliminary Injunction. (Electronic Case Filing (ECF) No. 17.) Defendants filed a response (ECF No. 18), and Plaintiff filed a reply (ECF No. 19). After a thorough review, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff, is a prisoner in custody of the Nevada Department of Corrections (NDOC), proceeding pro se in this action. (ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) The court screened the Amended Complaint and allowed Plaintiff to proceed with a single Eighth Amendment claim of deliberate indifference to a serious medical need against defendants Terry Lindburg, Susan Baros, William Sandie (incorrectly named as Sandie Williams), Glenn Chambers and E.K. McDaniel (incorrectly named in the caption as E.K. Daniel). (ECF No. 5.)

Specifically, Plaintiff alleges he requires special shoes that meet his medical needs, and has previously been permitted to order and wear these shoes. (ECF No. 6 at 3-4.) He claims the shoes were previously special ordered by Chambers or sent to him directly from a shoe company and paid for by his family. (*Id.*) He alleges that the shoes are prescribed by a doctor, yet prison

officials now refuse to permit him to have them. (*Id*.) He alleges that Lindburg prevented him from obtaining the shoes from an outside vendor unless they were medically authorized, and when Plaintiff showed him the medical authorization it was rejected as expired. (Id. at 4.) He obtained a medical update and sent a copy to Lindburg, who continued to refuse to issue the shoes, stating that he had to consult with Williams. (Id.) He initiated the grievance process and was denied relief by Baros, who told Plaintiff the shoes were a comfort item and had to be ordered from the prison canteen or package program. (*Id*.) Williams agreed and suggested Plaintiff order the shoes from defendant Chambers. (*Id*.) Chambers told Plaintiff he would not receive his shoes because he was no longer able to special order shoes for health reasons. (*Id*.) Plaintiff grieved the issue to McDaniel, who denied the request for assistance. (*Id*.) Without the shoes, he claims that he suffers in pain as he attempts to engage in day-to-day activities. (*Id*.)

Plaintiff has filed a Motion for Preliminary Injunction where he asks the court to order Defendants to permit Plaintiff to have his shoes. (ECF No. 17.)

## II. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure provide that a "court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.

*Id.* at 20 (citations omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

First, Plaintiff must establish a likelihood of success on the merits of his Eighth Amendment claim.

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference requires an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213. Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted) (finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).  "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

Defendants do not specifically dispute at this juncture that Plaintiff's foot condition constitutes a serious medical need. Nor do they dispute that Plaintiff requires special shoes, *i.e.*, size 15 E wide, extra cushioned shoes. (Chambers Decl., ECF No. 18-8 ¶ 8.)

Plaintiff claims that since 2008 he has been provided with shoes that meet his medical needs, pursuant to a medical order, and the shoes were either ordered by Chambers or sent to him directly from a shoe company paid for by his family. (ECF No. 17 at 2.) On May 2, 2015, he received a pair of shoes from a shoe company that was deemed unauthorized. (ECF No. 17 at 2.)

He claims that Lindburg advised him the shoes would not be issued from an outside vendor unless medically authorized, but when Plaintiff produced his medial authorization from 2008, Lindburg rejected it as expired. (*Id.*) Plaintiff obtained a new medical order which he presented to Lindburg, but Lindburg said he had to consult with Sandie, and refused to issue the shoes. (*Id.*) Plaintiff initiated the grievance process in an effort to have the shoes released, but his grievances were denied by Baros, Sandie and McDaniel. (*Id.* at 2-3.) He claims he suffers in pain because he cannot obtain the shoes. (*Id.* at 3.) As a result, he claims he is likely to succeed on his Eighth Amendment deliberate indifference claim.

As for Defendants, again, they acknowledge Plaintiff had a medical order allowing him to receive size 15 E wide shoes with extra cushion. (Chambers Decl., ECF No. 18-8 ¶8.) At LCC inmates are provided shoes through the laundry department through general clothing issue, which occurs every six months to a year. (Baros Decl., ECF No. 18-11 ¶ 12.) Pursuant to NDOC regulations, inmates and their families can also order shoes and other items through NDOC's approved package vendor, ACCESS SECUREPAK. (*Id.* ¶ 14.) According to Chambers, Plaintiff was issued shoes that met his needs on July 30, 2008, March 29, 2010, April 20, 2012, and July 5, 2014. (*Id.* ¶ 9.) On May 2, 2015, a pair of shoes were delivered to Plaintiff's attention at LCC. (Sandie Decl., ECF No. 18-9 ¶ 6.) The shoes are Reebok Royal Court Flyer basketball shoes, men's size 15. (Sandie Decl., ECF No. 18-9 ¶ 7A; ECF No. 18-1 at 2.) They were purchased from a vendor based in California—Walkenhorst's—for $56.89 by an individual named Natalie Wiggens-Brenson, who is believed to be Plaintiff's sister. (Sandie Decl., ECF No. 18-9 ¶ 7B; ECF No. 18-1 at 3.)

Administrative Regulation (AR) 711 governs inmate property, and AR 711.1(6)(D) discusses personal property purchased from external vendors and provides that "[a]ll packages must be sent from the approved vendor distribution center," and "[n]o items may be substituted for authorized catalog items." (Sandie Decl., ECF No. 18-9 ¶ 8; ECF No. 18-3 at 16.) Walkenhorst's is not an NDOC authorized vendor. (Sandie Decl., ECF No. 18-9 ¶ 9.) Therefore, Roy Lorton, who was employed as a correctional officer assigned to LCC's property room at the relevant time, issued Plaintiff an unauthorized property slip and the shoes were not released to

Plaintiff. (Lorton Decl., ECF No. 18-10 ¶ 9.)

In July 2015, Chambers asserts that he offered Plaintiff a pair of special order shoes, but Plaintiff refused, stating that he had a personal pair sent in and they were being held in the property room. (Chambers Decl., ECF No. 18-8 ¶ 10.) Chambers said he would look into this. (*Id*.) Chambers reviewed the status of the shoes and was informed they were not issued to Plaintiff because they were not ordered from an authorized vendor pursuant to AR 711.1(6). (*Id*. ¶ 11.) He advised Plaintiff of this, and offered him his "usual special order shoes, size 15 wide." (*Id*. ¶ 12.) Plaintiff refused, insisting he be provided the shoes being held in property. (*Id*. ¶ 13.)

Plaintiff filed a grievance, and Baros denied the informal level grievance because the shoes in property were from an unauthorized vendor and because she believed they qualified as a "comfort item" under AR 603.01. (Baros Decl., ECF No. 18-11 ¶ 10; *see also* ECF No. 19 at 4.) She advised him that he could obtain appropriate footwear through NDOC. (*Id*. ¶ 11.)

When Sandie received Plaintiff's first level grievance, he reviewed Plaintiff's medical file, and at the time the only medical notes in the file related to foot pain were from 2008 and 2012 indicating Plaintiff should be provided with appropriate sized shoes from prison laundry. (Sandie Decl., ECF No. 18-9 ¶ 14.) Sandie denied the first level grievance, and directed Plaintiff to speak to laundry to have shoes ordered that would fit his needs. (*Id*. ¶ 15.) He also advised Plaintiff he could purchase appropriate shoes through NDOC's approved package vendor, ACCESS SECUREPAK. (*Id*. ¶¶ 17-18; ECF No.19 at 5.)

Sandie and Baros reviewed ACCESS SECUREPAK's online catalog and determined they offer men's shoes up to size 17 4E. (Sandie Decl., ECF No. 18-9 ¶ 19; Baros Decl., ECF No. 18-11 ¶ 15.) To the extent Plaintiff claims he received a renewed medical order directing that he could have "his own special order prosthetic shoes that are in property" (ECF No. 6 at 11), Sandie denied the medical order that Plaintiff be given the "prosthetic shoes" held in property because the shoes had to be obtained from an authorized vendor, and he believed the shoes sent in were not "prosthetic shoes." (Sandie Decl., ECF No. 18-9 ¶ 21.) If Plaintiff truly required "prosthetic" shoes or perhaps "orthotic" devices, they must be provided by the Medical Division of NDOC itself pursuant to AR 603.01(2). (Sandie Decl., ECF No. 18-4 ¶ 22; ECF No.

18-4 at 2.)

Sandie states that he verified that Ms. Wiggens-Brenson could obtain a refund from Walkenhorst's for the unauthorized shoes and apply those funds towards the purchase of shoes through NDOC's approved vendor. (Sandie Decl., ECF No. 18-9 ¶ 11.)

In his reply brief, Plaintiff does not dispute that he previously received shoes that met his medical needs via Chambers. Nor does he dispute that Chambers offered to go through this procedure again when the Reebok shoes shipped from an outside vendor were deemed unauthorized. Instead, he states that he was not put on notice that his family could not pay a shoe company to mail in his shoes, and that he meets a medical exception under AR 603 but was still denied his shoes. (ECF No. 19 at 2.) What Plaintiff ignores is that AR 711.1 did put him on notice that outside packages must come from an authorized vendor, and that if Plaintiff qualified under AR 603 that the shoes would have to come from the medical department. More importantly, however, is that Plaintiff acknowledges that he had another avenue for obtaining shoes that met his medical needs, although he incorrectly claims this is not the issue. (*See* ECF No. 19 at 2.) Plaintiff had previously obtained shoes that met his medical needs by ordering them through Chambers, and this method was offered to him when the Reebok shoes ordered by his family were deemed unauthorized. He does not assert that the shoes ordered through Chambers were in any way deficient or did not address his medical needs. Instead, he insists he was entitled to the shoes his family had sent in.

The court cannot conclude that providing Plaintiff with an alternative avenue for obtaining his medically necessary shoes that was consistent with the ARs amounts to deliberate indifference, which requires a showing that a defendant knew of and disregarded an excessive risk to Plaintiff's health. The record before the court shows that Defendants knew of Plaintiff's medical need for special shoes, and offered him an alternative avenue for obtaining those shoes. Therefore, Plaintiff has not demonstrated a likelihood of success on the merits of his claim.

Nor has Plaintiff demonstrated he will suffer irreparable harm in the absence of injunctive relief. Again, he does not dispute that the shoes previously ordered for him through Chambers met his medical needs, such that having to order and wear those shoes instead of the

Reeboks sent by his family will cause him any harm. Rather, he includes a single conclusory sentence that he is in pain without the shoes held in the property room. (*See* ECF No. 17 at 6.) Plaintiff's mere preference for the Reebok shoes over the prison-ordered shoes does not establish he will suffer irreparable harm if he is not provided the Reeboks.

Under these circumstances, the court cannot conclude that the balance of equities or public interest weigh in Plaintiff's favor.

Therefore, Plaintiff's motion for a preliminary injunction should be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 17) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: February 27, 2017.

William G. Cobb

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE