# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| DEMETRIOUS STEWART, | 3:16-cv-00046-MMD-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| vs. | |
| E.K. MCDANIEL, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF No. 26, Exhibits at ECF Nos. 26-1 to 26-22, 28.) Plaintiff filed a response (ECF No. 33), and Defendants filed a reply (ECF No. 35).

After a thorough review, the court recommends granting Defendants' motion.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Lovelock Correctional Center (LCC). (*Id.*) The court screened the Amended Complaint and allowed Plaintiff to proceed with a single Eighth Amendment claim of deliberate indifference to a serious medical need against defendants Terry Lindburg, Susan Baros, William Sandie (incorrectly named as Sandie Williams), Glenn Chambers and E.K. McDaniel (incorrectly named as E.K. Daniel). (Screening Order, ECF No. 5.)

Plaintiff alleges that he requires special shoes that meet his medical needs, and that he had previously been permitted to order and wear these shoes. He claims the shoes were previously ordered by Chambers or sent to him directly from a shoe company and paid for by his family. He claims the shoes are prescribed by a doctor, yet prison officials subsequently refused to permit him to have them. He alleges that Lindburg prevented him from obtaining shoes from an outside vendor unless they were medically authorized, and when Plaintiff showed him the medical authorization it was rejected as expired. When he obtained the medical update and sent it to Lindburg, he contends that Lindburg continued to refuse to issue the shoes, stating he had to consult with Williams. He initiated the grievance process and was denied relief by Baros, who told him the shoes were a comfort item and had to be ordered from the prison canteen or package program. Williams agreed and suggested Plaintiff order the shoes from Chambers. Chambers told Plaintiff he would not receive his shoes because he was no longer able to special order shoes for health reasons. Plaintiff grieved the issue to McDaniel, who denied his request for assistance. Without the shoes, he claims he suffers in pain as he attempts to engage in day-to-day activities.

Plaintiff previously sought a preliminary injunction, but his request was denied, with the court finding he had not demonstrated a likelihood of success on the merits, likelihood of suffering irreparable harm, that the balance of equities tipped in his favor, or that injunctive relief was in the public interest. (*See* ECF Nos. 17, 21, 34.) Plaintiff appealed that determination, and the Ninth Circuit affirmed the decision. (ECF No. 44.)

Defendants now move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies; (2) there is no evidence McDaniel or Baros had any personal participation in the alleged events; (3) Plaintiff cannot establish deliberate indifference; and (4) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1)

by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

That being said,
[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50 (citations omitted).

///

## III. DISCUSSION

**A. Exhaustion**

Defendants acknowledge Plaintiff submitted a grievance that was directed at property staff for giving him an unauthorized notification for a pair of basketball shoes he had ordered in the mail, and that he complained that property staff should have given him his "medical shoes," attaching a medical order related to his chronic medical condition. (ECF No.26 at 4.) Defendants likewise admit that Plaintiff took this grievance through the second and final level. They argue, however, that he did not grieve he had been denied requests for shoes other than these, and he did not identify his chronic medical condition, or the type of shoe required. (Id. at 10.) As such, they contend he failed to properly exhaust his administrative remedies.

The court disagrees.

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (*overruling in part Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the

district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes*, 810 F.3d at 658.

Within NDOC, the exhaustion process is governed by Administrative Regulation (AR) 740. (ECF No. 26-21.) An inmate is supposed to attempt to resolve grievable issues through discussion with their caseworker, and then must complete three levels of grievance review—informal, first and second levels— in order to exhaust administrative remedies. (*Id.* at 5-10.)

Where the grievance system does not discuss the particular level of specificity required for exhaustion, the court requires the grievance to alert the prison to the nature of the wrong for which the redress is sought. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). In this action, Plaintiff claims that he was not provided with medically prescribed shoes. The grievance documentation in the record sufficiently put the Defendants on notice of the nature of the wrong for which he sought redress by referencing the fact that shoes he claimed were medically prescribed were deemed unauthorized. (*See* ECF No. 26-13 at 8-12.) Therefore, Defendants are not entitled to summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies. The court will now address the arguments

6

pertaining to the merits of Plaintiff's Eighth Amendment claim.

**B. Eighth Amendment Deliberate Indifference to Serious Medical Needs**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim of deliberate indifference requires an examination of two elements: the seriousness of the prisoner's medical need, and the nature of the defendant's response to that need. *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds in WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). Examples of conditions that are "serious" in nature include "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

If the medical need is "serious," the plaintiff must show the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). Deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Akhtar*, 698 F.3d at 1213 (citation omitted).

Defendants do not dispute that Plaintiff requires special shoes, i.e., size 15 E wide, extra cushioned shoes. Defendants do argue that this need for special-sized shoes does not constitute a serious medical need. Plaintiff, on the other hand, claims that he experienced pain when he had ill-fitting shoes.

Assuming, without deciding, that Plaintiff suffers from a serious medical condition relative to his feet and footwear, the court nevertheless concludes there is no evidence that Defendants were deliberately indifferent to his condition.

Plaintiff first complained of foot pain in 2008, and a medical order issued on April 23, 2008, that Plaintiff be provided with appropriate-sized tennis shoes, which could be specially ordered if necessary.

(ECF No. 28-1 at 10; ECF No. 28-1 at 13; ECF No. 33 at 13.) Plaintiff sent a kite to Dr. Scott on May 15, 2008, regarding the shoes on order, stating that the boots he was wearing were too big and hurt his ankles. (ECF No. 28-1 at 9.) In response, he was advised that the shoes did not need to be ordered by medical, but that he needed to obtain shoes that were the right size for him from the prison laundry. (*Id*.) There is a notation in Plaintiff's medical file on November 9, 2010, that he was reclassified to a lower bunk due to a history of foot injury. (ECF No. 28-1 at 14.)

Defendants acknowledge that Baros, Sandie, Lindberg and Chambers were on notice that Plaintiff needed appropriate-sized tennis shoes. (ECF No. 26 at 15-16.) Chambers oversaw the issuance of special order shoes to Plaintiff on multiple occasions, and specifically on July 30, 2008, March 29, 2010, April 20, 2012, and July 15, 2014. (Chambers Decl., ECF No. 26-8 at 2 ¶¶ 8-9, ECF No. 26-19 at 2 ¶¶ 6-7; ECF No. 26-15.) According to Plaintiff, he had been provided New Balance shoes through Chambers, which fit his needs, but the shoes were subsequently changed to another brand, which hurt his feet. (ECF No. 33 at 4-5, 18-19 ¶¶ 4, 6.) He refused to accept these shoes, and this is what led to him have his family order a different pair of shoes to be sent to Plaintiff at LCC. (ECF No. 33 at 5, 18-19.) This comports with Chambers' version of events that in July 2015, he offered Plaintiff another pair of special order shoes which Plaintiff refused, stating that he had a personal pair of shoes sent in. (Chambers Decl., ECF No. 26-8 at 2 ¶ 10; Chambers Decl., ECF No. 26-19.)

A pair of Reebok Royal Court Flyer shoes in size 15 were ordered by Plaintiff's family member from a vendor called Walkenhorst's, for a total of $56.89, and were shipped to Plaintiff at LCC. (ECF No. 26-1 at 2-4; ECF No. 26-2 at 2[1].)

Chambers reviewed the shoes Plaintiff had referenced, and they were not issued to Plaintiff because they were not from an authorized vendor, which was conveyed to Plaintiff. (Chambers Decl., ECF No. 26-8 at 3 ¶ 11; Sandie Decl., ECF No. 26-9 ¶¶ 10, 17-18; Lorton Decl., ECF No. 26-10 at 2 ¶ 9; Lindberg Decl., ECF No. 26-12 ¶ 10; ECF No. 33 at 6.) Plaintiff acknowledges that he was advised that the same shoes were available from the prison's authorized vendor, ACCESS SECUREPAK. (ECF No.

---

[1] This is the declaration of Roy Lorton, a correctional officer assigned to LCC's property room, who authenticates a photograph taken of the shoes delivered to LCC and addressed to Plaintiff, which were held in the property room along with a copy of the accompanying invoice.

33 at 6.) Sandie had reviewed ACCESS SECUREPAK's catalog and determined that they offer men's shoes up to size 17 4E. (Sandie Decl., ECF No. 26-9 ¶ 19.) Plaintiff also admits that he was told his family could obtain a refund from the shoes purchased from Walkenhorst's and apply it to shoes purchased from ACCESS SECUREPAK. (ECF No. 33 at 6.) In fact, Sandie had confirmed with Plaintiff's family member that she could obtain a refund from Walkenhorst's for the unauthorized shoes, and apply those funds toward the purchase from an NDOC-approved vendor. (Sandie Decl., ECF No. 26-9 at 3 ¶ 11.)

Plaintiff argues that the problem with this is that Defendants waited until after the shoes his family ordered had arrived to tell him that his vendor was not authorized, and had he known about ACCESS SECUREPAK, he would have had his family purchase the shoes from them in the first place. (ECF No. 33 at 6.) The fact that Plaintiff did not find out about the authorized vendor until after the shoes had been sent in by his family does not make Defendants deliberately indifferent to an excessive risk to Plaintiff's health when Plaintiff acknowledges that his family member could obtain a refund and purchase appropriately sized shoes acceptable to Plaintiff from the prison's approved vendor.

There is a medical order in Plaintiff's file dated December 2, 2015, which states that Plaintiff had "his own special order prosthetic shoes that are in property. The shoes correct a flat foot pronation deformity." (ECF No. 28-1 at 11.) The form stated that the "orthotic shoes" should be released from property. (*Id*.) This order was rejected by Sandie. (*Id*.) Sandie did so because the shoes came from an unauthorized vendor, and were not "prosthetic" shoes or "orthotic" devices as NDOC's regulations define those terms. (Sandie Decl., ECF No. 26-9 ¶¶ 20-21.) Plaintiff argues that Sandie was not medically qualified to make that determination. (ECF No. 33 at 7.) Sandie's determination appears to be consistent with NDOC's regulations which require medically required prosthetics to come from an authorized vendor (ECF No. 26-3, ECF No. 26-4), and common understanding of the terms "prosthetic" and "orthotic." In any event, Plaintiff does not dispute he was still able to purchase the shoes through NDOC's authorized vendor.

In support of his opposition, Plaintiff provides a declaration of another inmate who says he was permitted to purchase shoes from a vendor other than ACCESS SECUREPAK six months after Plaintiff received his shoes. (ECF No. 33 at 22-23.) This does not create a genuine dispute as to any material fact

9

in this action. This is not evidence that Defendants were deliberately indifferent *to Plaintiff's* health because regardless of what occurred with this other inmate, Plaintiff still had a mechanism to obtain appropriately-sized shoes.

In sum, the material facts are not genuinely in dispute, and the record does not demonstrate Defendants were deliberately indifferent to a serious medical need when they denied Plaintiff issuance of shoes from an unauthorized vendor, but he still had a mechanism to obtain appropriate-sized shoes from an authorized vendor. Therefore, Defendants' motion for summary judgment should be granted.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 26) and entering judgment in Defendants' favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: September 22, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE